UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

ERIC P. VON WIEGEN and )
PAMELA VON WIEGEN, )
 ) Civil Action No. 5: 13-40-DCR
Plaintiffs, )
 )
V. )
 )
SHELTER MUTUAL INSURANCE ) **MEMORANDUM OPINION**
COMPANY, ) **AND ORDER**
 )
Defendant. )

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Defendant Shelter Mutual Insurance Company's ("Shelter") Motion to Bifurcate and Motion to Stay Discovery. [Record No. 10] For the reasons set forth below, both motions will be granted.

**I.**

Plaintiffs Eric P. von Wiegen and Pamela von Wiegen commenced this action on January 10, 2013, in the Fayette Circuit Court. On February 14, 2013, this matter was removed to this Court based on diversity jurisdiction. This case arises out of an automobile accident involving Eric von Wiegen and occurring on July 9, 2010. Von Wiegen claims that he was injured when his automobile was rear-ended by a vehicle operated by another driver. Because the alleged injuries exceeded the insurance coverage of the other driver, after settlement, the plaintiffs submitted a claim under the underinsured motorist ("UIM") policy issued by the defendant.

The plaintiffs have asserted two claims in this action. First, they contend that Shelter owes them UIM benefits under their policy. Second the von Wiegens assert that Shelter acted in bad faith in adjusting their UIM claim. However, Shelter argues that, because Eric von Wiegen failed to appear for an independent medical exam (IME) as required by the policy,[1] the plaintiffs violated the "Cooperation Clause" and are not entitled to UIM benefits. Additionally, Shelter asks the Court to bifurcate the two claims because the threshold issue in the case is whether it owes the plaintiffs UIM benefits under the policy. And this issue, if decided in Shelter's favor, will be dispositive of the bad faith claim.

**II.**

Rule 42(b) of the Federal Rules of Civil Procedure affords a trial court the discretion to order a separate trial where such action will further convenience, avoid prejudice, or promote efficiency. *See* Fed. R. Civ. P. 42(b). Therefore, bifurcation may be appropriate where, for example, litigation of the first issue might eliminate the need to litigate a second claim. The aim and purpose of Rule 42(b) is aptly summarized as follows:

> It is the interest of efficient judicial administration that is to be controlling under the rule, rather than the wishes of the parties. The piecemeal trial of separate issues in a single lawsuit or the repetitive trial of the same issue in severed claims is not to be the usual course. Thus, Rule 42(b) should be resorted to only as the result of the exercise of informed discretion when the district judge believes that separation will achieve the purposes of the separate trial rule.

---

[1] The plaintiffs have provided the Court with a lengthy explanation regarding the missed IME. [*See* Record No. 12, pp. 2-5.] The plaintiffs assert that Eric von Wiegen "did not refuse an IME and Defendant is aware that Plaintiff intended to participate in the IME." [Record No. 12, p. 5] The plaintiffs further contend that Eric von Wiegen is willing to attend an IME, and insinuates that there was obfuscation regarding the examination in an attempt to avoid coverage.

9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2388 (2d ed. 2008).

The decision regarding whether to bifurcate is dependent on the facts and circumstances of each case. *Saxion v. Titan-C-Manufacturing, Inc.*, 86 F.3d 553, 556 (6th Cir. 1996). Likewise, the decision regarding whether to stay discovery is governed by the principles of judicial economy and discretion. "Trial courts have broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined." *Gettings v. Bldg. Laborers Local 310 Fringe Benefits Fund*, 349 F.3d 300, 304 (6th Cir. 2003).

## III.

Shelter argues that the UIM and bad faith claims should be bifurcated and that discovery on the bad faith claim should be stayed until the UIM claim is decided. It argues that the requested bifurcation and stay will more efficiently resolve this matter because the interpretation of the insurance policy is a matter of law to be decided by the Court. *See Kemper Nat. Ins. Cos v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 871 (Ky. 2002). Shelter further argues that "[i]t would be a waste of time and resources for the parties to engage in extensive discovery on the bad faith claim[] before the Court rules on the coverage issue, which may dispose of the entire lawsuit." [Record No. 10-1, p. 3]

Federal district courts in Kentucky have found that bifurcation and a stay of discovery is appropriate in similar situations, and the Sixth Circuit has approved this approach. *See, e.g., Honican v. Stonebridge Life Ins. Co.*, No. 05-73-DLB, 2005 WL 2614904 (E.D. Ky. Oct. 13, 2005) (granting a motion to bifurcate a breach of contract from a bad faith claim and staying

discovery on the bad faith claim because prevailing on the breach of contract claim was critical to the bad faith claim); *Reynolds v. Safeco Ins. Co. Of Am.*, No. 06-322-JMH, 2007 WL 38348 (E.D. Ky. Jan. 5, 2007) (bifurcating bad faith and contract claims when considering that liability on the contract must first be resolved before the plaintiff could recover under a bad faith claim); *see also Smith v. Allstate Ins. Co.*, 403 F.3d 401, 407 (6th Cir. 2005) ("Because the merits of the bad faith claim depended on whether the limitations provision was valid, it was reasonable for the court to resolve the validity question before allowing the bad faith claim to proceed.").

The plaintiffs argue that under Kentucky case law they have not forfeited their UIM claims, citing cases that purportedly limit the impact of "Cooperation Clauses" regarding forfeiting claims under insurance policies.[2] [Record No. 12, pp. 6-11 (citing *Jones v. Bituminous Cas. Corp.*, 823 S.W.2d 798 (Ky. 1991))] However, Shelter argues that *Jones* is inapposite because it involves notice issues under insurance policies, and that even if *Jones* applies, it actually supports Shelter's position. [*See* Record No. 13, p. 3.] The parties' arguments on this point illustrate that there is a genuine dispute over the UIM claim and whether the failure to attend the IME constitutes a forfeiture under the policy. It is this dispute that counsels the Court to bifurcate.

The plaintiffs also argue that there is no coverage issue in this case. However, regardless of the merits of Shelter's arguments in support of its affirmative defense,[3] Shelter disputes its

---

[2]Although Shelter points out that the plaintiffs have inappropriately argued the substantive merits of its claim, both parties have gone far beyond the scope of the issue of bifurcation and stay. Most of the arguments are more appropriately considered in the context of summary judgment.

[3]The plaintiffs argue that the Kentucky Supreme Court has limited the impact of "Cooperation Clauses" as a forfeiture mechanism to avoid coverage. [Record No. 12, p. 6] The

obligation to pay the UIM claims under the terms of the policy. [Record No. 12, p. 11] This is a threshold issue. Without the obligation under the contract, the plaintiffs' bad faith claims cannot proceed. *See Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993) (holding that in order to prevail on a bad faith claim, "the insurer must be obligated to pay the claim under the terms of the policy."). As in *Honican*, *Reynolds*, and *Smith*, there is efficiency in first resolving the threshold coverage issue before proceeding on the bad faith claim. The Court needs to address the parties' arguments regarding the plaintiffs' rights to UIM benefits under the policy, and would need to do so even if these claims were joined.[4] Bifurcation, therefore, is economical under the circumstances presented.

The plaintiffs also argue that the claims should be considered together because Shelter's claim of forfeiture is inextricably linked to the plaintiffs' bad faith claim. The plaintiffs contend that Shelter's conduct regarding the scheduling of the IME and the subsequent affirmative defense makes the two claims inseparable. They cite two cases where other district courts declined to bifurcate first-party actions against an insurer where factual and legal considerations were inextricably intertwined. *See Tharpe v. Illinois Nat. Ins. Co.*, 199 F.R.D. 213, 215 (W.D. Ky. 2001); *Lively v. USAA Cas. Ins. Co.*, No. 08-422-JMH, 2009 WL 1116327 (E.D. Ky. Apr.

---

plaintiffs delve into the facts surrounding the missed IME, and suggest that Shelter is continuing to act in bad faith by using this missed IME to dispute the policy coverage. However, whether Shelter's affirmative defense and related arguments constitute relevant evidence regarding the plaintiffs' bad faith claims is a separate issue that will be addressed if the plaintiffs are successful in establishing that Shelter owed an obligation for the UIM claims.

[4]The Court is not stating — as the plaintiffs frame it — that Mr. von Wiegen's failure to attend one IME is necessarily the threshold issue in the case. Rather, the threshold issue is each party's obligations under the policy.

-5-

24, 2009). But after reviewing these authorities, the Court rejects the contention that the alleged "manipulation" of the IME creates a situation where the claims are inextricably interwined.

In this case, the plaintiffs' bad faith claim refers to conduct far beyond the IME. For example, the plaintiffs allege that Shelter failed to negotiate the claim in good faith, made unreasonable and unconscionable demands for additional information from the plaintiffs, failed to return confidential information to the plaintiffs despite agreeing to do so on demand, and implemented a custom of processing the claims of certain professions, including claims of attorneys,[5] in a way that violates good faith settlement requirements. [*See* Record No. 1-1.] Discovery on these issues will exceed the scope of the obligation to pay UIM benefits under the contract. Here, the bad faith claims are distinguishable from those in *Tharpe*, where the court found that the facts relating to the first claim were applicable to all of the claims. 199 F.R.D. at 215. And, unlike the *Lively* court, there is efficiency in bifurcating the breach of contract and the bad faith claims in the present action. *See Lively*, 2009 WL 1116327, at *5.

In this case, convenience, efficiency, and economy are served by bifurcation. The Court need not find that all of the criteria of convenience, avoiding prejudice, and economy are present for bifurcation to be proper; instead, only one of the criterion need be present.[6] *Saxion*, 86 F.3d at 556. Considering that there are "preliminary questions that may dispose of the case," it serves

---

[5]Plaintiff Eric P. von Wiegen is an attorney.

[6]As noted earlier, the parties have gone beyond the scope of issues presented by the defendant's motions. Some of the issues, such as whether forfeiture occurred, whether Shelter suffered substantial prejudice by the plaintiff's failure to attend the IME, whether the plaintiffs "substantially complied" with the policy, and public policy concerns, are simply not relevant at this time.

the interest of economy to stay discovery on the bad faith claim. *Gettings*, 349 F.3d at 304. Although there may be some overlap regarding the coverage issue and the bad faith claim,[7] notwithstanding this overlap, the Court will grant Shelter's request to stay activity concerning the bad faith claim until the UIM claim is decided.  Accordingly, it is hereby

**ORDERED** as follows:

1. Defendant Shelter Mutual Insurance Company's Motion to Bifurcate and Motion to Stay Discovery [Record No. 10] are **GRANTED**.

2. Discovery regarding the plaintiffs' bad faith claim shall be **STAYED** and resolution of this claim, together with the plaintiffs' claim for punitive damages, shall be **DEFERRED** and held in **ABEYANCE** until the underlying claim regarding UIM coverage has been resolved.

This 17th day of July, 2013.



Signed By:
*Danny C. Reeves* DCR
United States District Judge

---

[7]The plaintiffs assert that they will be "seeking ultimately the same materials in discovery for the Defendants['] bad faith in relation to [Mr. von Wiegen's] alleged failure to attend and [his] IME." [Record No. 12, p. 13]