UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| ERIC P. VON WIEGEN and<br>PAMELA VON WIEGEN, | )<br>)<br>) | |
| | ) | Civil Action No. 5: 13-040-DCR |
| Plaintiffs, | )<br>) | |
| V. | )<br>) | |
| SHELTER MUTUAL INSURANCE<br>COMPANY, | )<br>)<br>) | **MEMORANDUM OPINION**<br>**AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Plaintiffs Eric P. von Wiegen's and Pamela von Wiegen's motions to exclude Defendant Shelter Mutual Insurance Company's ("Shelter") expert witness. [Record Nos. 32, 36] For the reasons set forth below, the plaintiffs' motions will be denied.

**I.**

This case arises out of an automobile accident involving Plaintiff Eric von Wiegen that occurred on July 9, 2010. [Record No. 1-1] Mr. von Wiegen claims that he was injured when his car was rear-ended by a vehicle operated by another driver. Because the alleged injuries exceeded the insurance coverage of the other driver, after settlement between Mr. von Wiegen and the other driver, the plaintiffs submitted a claim under their underinsured motorist ("UIM") policy issued by Shelter.

The plaintiffs have asserted two claims in this action. First, they contend that Shelter owes them UIM benefits under the policy. Second, they claim that Shelter acted in bad faith in adjusting their UIM claim.[1] The plaintiffs seek future medical expenses, future pain and suffering, and lost wages.[2] Mr. von Wiegen claims that, for several months after the accident, he was unable to continue his schedule as an attorney. Thus, he seeks to recover lost wages as a result of the injury. [Record No. 36, p. 3]

In 2012, Shelter engaged Calvin D. Cranfill, CPA/ABV/CFF, as a forensic accountant, to review the financial information pertaining to Mr. von Wiegen's claims. [Record No. 21-1, p. 1] At that time, Cranfill informed Shelter that he was unable to estimate the economic loss of Mr. von Wiegen (an attorney who worked primarily on a contingency-fee basis) based on the information provided, and requested additional information. [*Id*.] The parties dispute the extent to which Shelter attempted to obtain that information from the plaintiffs. Shelter has provided e-mails from October and November of 2012, in which counsel for the plaintiffs stated that he was not "inclined to create or prepare documents or other information requested by your accountant." [Record No. 47-8] The plaintiffs apparently contacted an economist/accountant

---

1       On July 17, 2013, the Court bifurcated the bad faith claim and stayed discovery on that claim until the underlying coverage issue is resolved. [Record No. 15] The coverage issue arose because Shelter argues that the plaintiffs did not comply with their policy when Mr. von Wiegen failed to attend an independent medical examination ("IME"). The plaintiffs dispute this, and argue that they believed the IME was part of a settlement package that they rejected. The plaintiffs assert that they have offered to pay for the missed IME and attend another examination to satisfy their compliance with the policy.

2       By counsel's calculation in July 2012, the loss of income for Mr. von Wiegen for five and a half months in 2010 is in excess of $422,000.00 and his future medical expenses exceed $7,500.00. [Record No. 40-1, p. 2] The plaintiffs' expert has estimated losses of $994,164.00 to $1,052,594 as a result of the injuries suffered by Mr. von Wiegen. [Record No. 16-1]

of their own, who did not believe that additional information was necessary to calculate the amount of lost wages. [Record Nos. 47-5, 47-6]

On September 24, 2013, Shelter timely-filed its Rule 26 Expert Disclosure, identifying Mr. Cranfill as its expert witness. [Record No. 21] Shelter stated that Mr. Cranfill would provide testimony "concerning his review of financial information provided by Plaintiffs, the information required to accurately assess economic loss, if any, and his request for additional financial information." [Record No. 21] Mr. Cranfill "reviewed Plaintiff[s'] financial information in an effort to determine the amount of the economic loss, if any, sustained as a result of the July 9, 2013" accident. [Record No. 21-1, p. 1] Shelter also disclosed that Mr. Cranfill disagreed with the conclusions of plaintiffs' expert for a variety of reasons, and would testify to that effect. [Record No. 21-2]

The plaintiffs have filed two motions to exclude the defendant's expert: a motion to exclude because the defendant allegedly did not comply with the Court's Scheduling Order and Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure, and a motion *in limine* under Rule 702 of the Federal Rules of Evidence. [Record Nos. 32, 36]

**II.**

Under the Federal Rules of Civil Procedure, an expert must provide a report that contains:

(i)   a complete statement of all opinions the witness will express and the basis and reasons for them;

(ii)  the facts or data considered by the witness in forming them;

(iii) any exhibits that will be used to summarize or support them;

(iv)   the witness's qualifications, including a list of all publications authored in the previous 10 years;

(v)   a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by depositions; and

(vi)   a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B). Failure to do so can result in the party losing the ability to use the information or witness, unless the failure was substantially justified or is harmless. Fed. R. Civ. P. 37(c)(1). Further, it is within the Court's discretion whether to admit or exclude expert testimony. *In re Scrap Metal Antitrust Litigation*, 527 F.3d 517, 528 (6th Cir. 2006). For an expert's opinion to be admissible, it must satisfy three requirements:

> First, the witness must be qualified by knowledge, skill, experience, training, or education. Second, the testimony must be relevant, meaning that it will assist the trier of fact to understand the evidence or to determine a fact in issue. Third, the testimony must be reliable.

*Id.* at 529-30.

### III.

1.   <u>The Alleged Failure to Comply with FRCP 26(a)(2)(B) and the Court's Scheduling Order</u>

The plaintiffs argue that Mr. Cranfill should be disqualified from testifying as an expert because his reports do not meet the requirements of Rule 26(a)(2)(B)(i), (ii), and (iii) and the Court's March 26, 2013 Scheduling Order. [Record No. 32] They claim that his reports should thus be excluded under Rule 37(c) of the Federal Rules of Civil Procedure.[3]

---

3   The test for exclusion under Rule 37(c) is "very simple: the sanction is mandatory unless there is a reasonable explanation of why Rule 26 was not complied with or the mistake was harmless." *Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transp.*, 596 F.3d 357, 370 (6th Cir. 2010) (internal quotation marks

In Mr. Cranfill's initial report, he states that he reviewed the following materials to form his opinions:

1. Corporate Returns of Mediation Services, Inc., for the years 2006-2011;

2. Individual Income Tax Returns of the plaintiffs;

3. A deposition of Mr. von Wiegen from May 10, 2012;

4. A copy of an agreement to provide services to Mr. von Wiegen by Shannon Vibbert (an attorney Mr. von Wiegen hired to help him manage his cases after his injury) dated July 12, 2010; and

5. A copy of a check made payable to attorney Vibbert in the amount of $20,000.00.

[Record No. 21-1]

Mr. Cranfill's opinion prior to litigation instituted was that he would need more information to estimate the amount of lost wages, specifically: a list of cases in process at the time of the accident; a list of cases taken since the accident by date of acceptance; a list of any matters rejected after the accident; the time expended on each case accepted by the attorney on a month-by-month basis from the date of the accident through the end of 2011[4]; and a complete list by case and date of all funds received in payment of settlement and/or fees to either Mediation Services, Inc., or Mr. von Wiegen, individually. [Record No. 21-1, p. 3] On September 20, 2013, Mr. Cranfill reviewed the report of the plaintiffs' expert, William T.

---

omitted). Rather, the Court must determine whether "there is a reasonable explanation of why Rule 26 was not complied with or the mistake was harmless." *Id.* (internal quotation marks omitted). An omission is "harmless" if it involves "an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party." *Vance ex rel. Hammons v. United States*, No. 98-5488, 1999 U.S. App. LEXIS 14943, at *17 (6th Cir. June 25, 1999) (emphasis omitted).

4   Mr. von Wiegen asserts that plaintiffs' attorneys do not normally keep this type of information.

Baldwin, Ph.D., and filed an additional report critiquing Dr. Baldwin's opinions.[5] [Record No. 21-2] In that report, he outlined his reasons for disagreeing with Dr. Baldwin's acceptance of Mr. von Wiegen's financial data without further analysis; inherent assumptions on income continuity; and failure to request an analysis of von Wiegen's caseload before and after the accident. [*Id.*]

The plaintiffs argue that Mr. Cranfill's testimony should be excluded because his reports did not contain all the opinions he will express, the basis and reasons for them, or the facts and data considered by the witness in forming their opinions. [Record No. 32] The plaintiffs also argue that during his deposition, Mr. Cranfill testified that he was not qualified to provide an opinion regarding the central issue of wage loss and impairment to wage earning capacity.[6]

The reports provided comply with Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure, and were timely under the Court's Scheduling Order. [*See* Record Nos. 21-1, 21-2.] Shelter provided Mr. Cranfill's letter reports which stated his opinions and his reasons for forming them. *See* Fed. R. Civ. P. 26(a)(2)(B)(i). He identified the facts and data considered in forming these opinions because he explicitly lists the documents he reviewed in forming his opinions, Fed. R. Civ. P. 26(a)(2)(B)(ii), and he submitted several exhibits along with his reports, including von Wiegen's historical earnings and relevant real estate records. Fed. R. Civ. P. 26(a)(2)(B)(iii).

---

5      The plaintiffs assert that Shelter did not provide Mr. Cranfill with any information obtained through discovery except Mr. Baldwin's report. This is yet another point of contention between the parties. [Record No. 32, p. 32 (citing Record No. 32-5, p. 132 lns. 1-5)]

6      The plaintiffs' second argument is an attack on Mr. Cranfill's qualifications under Rule 702 of the Federal Rules of Evidence, and will be addressed separately.

The Court has the discretion and power to exclude testimony or issue another sanction if a party has failed to comply with the disclosure requirements of Rule 26(a)(2)(B). Fed. R. Civ. P. 37(c)(1). However, Cranfill's testimony will not be excluded on these grounds. *See, e.g. Aurand v. Norfolk S. Ry. Co.*, 802 F. Supp. 2d 950 (N.D. Ind. 2011) (overruling defendant's challenge that experts' reports were inadequate because experts were listed in plaintiffs' disclosures and the disclosures stated what their testimony would concern). In addition, any deficiency in Cranfill's reports would be harmless because Cranfill was timely-identified as an expert witness and the plaintiffs have had ample time to depose him (and in fact have deposed him at length, as evidenced by the 365-page deposition transcript). *See, e.g.* Fed. R. Civ. P. 37(c)(1); *see also Collins v. SET Enters.*, 891 F. Supp. 2d 1028 (N.D. Ill. 2012). Further, Cranfill is apparently offered, at least partially, as a rebuttal witness to the plaintiffs' expert. Accordingly, the Court will deny the plaintiffs' motion to exclude.

    2.    <u>Motion to Exclude for Failure to Comply with Rules 401, 402, and 702 of the Federal Rules of Evidence</u>

In a separately-filed motion, the plaintiffs seek to exclude Mr. Cranfill's testimony under the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579 (1993). [Record No. 36] They argue that Mr. Cranfill testified that he was not qualified to address earning capacity in his deposition; thus, his testimony should be excluded.[7] Upon the

---

7    Specifically, Mr. Cranfill testified in deposition:

    Q:    Just so we're clear, you're not qualified to address earning capacity, are you?
    A.    I've not done that and I would not say that I would be, no.

[Record No. 32-6, p. 359] Mr. Cranfill's affidavit explains that by "earning capacity," he referred to future earning capacity. [Record No. 42-12] Shelter has not offered Mr. Cranfill as an expert on future earning capacity.

challenge of a party's expert witness, the Court assumes the role of a gatekeeper to determine that the expert testimony is reliable and relevant. *Daubert,* 509 U.S. at 587. Under Rule 702 and *Daubert*, an expert may be qualified through "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. If qualified, the expert may testify if their knowledge will aid the trier of fact and where their opinions are based on sufficient data, reliable methods, and the facts of the case. *Id.*

The plaintiffs attack Mr. Cranfill's testimony on all three grounds. However, Mr. Cranfill is a certified public accountant who is certified in financial forensics and accredited in business valuation by the American Institute of Certified Public Accountants. [Record No. 21-2, p. 4] He has testified in over twenty cases related to economic damages, and has provided testimony in several cases concerning asset valuation. [*Id.*, pp. 4-11] Thus, his qualifications enable him to render him an opinion on matters of economic damages.

The plaintiffs also urge the Court to follow the reasoning of cases from this district where expert testimony was excluded on qualification grounds. *See Hamilton v. Pike Cnty., Ky.*, Civil No. 11-99-ART, 2012 U.S. Dist. LEXIS 178522 (E.D. Ky. Dec. 17, 2012) and *Burgett, et al. v. Troy-Bilt*, LLC, Civil No. 12-25-ART, 2013 U.S. Dist. LEXIS 96893 (E.D. Ky. July 11, 2013). In *Hamilton*, the court determined that a well-respected and well-educated nurse practitioner was not qualified to opine on a medical standard of care. *Hamilton*, 2012 U.S. Dist. LEXIS 178522, at *9. However, that holding was based on the fact that the otherwise well-educated nurse was not qualified to opine on the standard of care required of a doctor in a specific field, because she had no specialized knowledge of that field. *See id.* at *9-10. And in *Burgett*, the court

determined that a proffered mechanical engineer expert was not qualified to testify about an electrical system, biomechanical issues, or human factors. *Burgett*, 2013 U.S. Dist. LEXIS 96893, at *6-7.

Both cases demonstrate the belief that "[t]he witness stand is not a circus — there is no 'Come One, Come All' sign inviting anyone who wishes to speak to step right up." *Id*. at *1. Yet expert testimony will be admitted so long as the expert "has relevant expertise enabling him to offer responsible opinion testimony helpful to a judge or a jury." *Glover v. Hester*, No. 09-978, 2011 WL 1362103, at *1-2 (W.D. La. Apr. 11, 2011); *see also Handi-Craft Co. v. Action Trading, S.A.*, No. 4:02 CV 1731 LMB, at *2 (E.D. Mo. May 21, 2004) (admitting expert opinion on lost profits even where expert's credentials were mainly in divorce proceedings); *KCH Servs., Inc. v. Vanaire, Inc.*, No. 05-777-C, 2010 WL 1416672, at *1 (W.D. Ky. March 31, 2010) (admitting testimony of three experts where damages were difficult to calculate). Rejection of expert testimony under *Daubert* is the exception rather than the rule. *In re Scrap Metal,* 527 F.3d at 530 (quoting Fed. R. Evid. 702 advisory committee notes). As stated above, Mr. Cranfill has opined that Mr. von Wiegen has failed to provide sufficient documentation to satisfactorily establish his lost wages claim and that Dr. Baldwin's expert report is flawed based because of his failure to thoroughly analyze additional financial records needed to make a sound lost-wages determination. [Record No. 42, p. 9] He is not offered as an expert on the future earning capacity of Mr. von Wiegen, an opinion which Mr. Cranfill concedes he would not be qualified to address.

In this case, the testimony of Mr. Cranfill will be helpful to the trier of fact in making its determination regarding Mr. von Wiegen's alleged lost profits. In addition, his opinion will assist the trier of fact determine whether the plaintiffs' expert had enough data and documentation to determine Mr. von Wiegen's amount of lost damages. *See Bowers v. Norfolk S. Corp*, 537 F. Supp. 2d 1343, 1351 (M.D. Ga. 2007) (internal citation and quotation marks omitted) ("[E]xpert testimony is helpful to the trier of fact if it concerns matters that are beyond the understanding of the average lay person."). Damages in this instance are likely outside of the understanding of the average lay person because Mr. von Wiegen's income comes from sources such as annuities and structured settlements.

Further, Mr. Cranfill's opinions do not lack reliability. Rather, he has "relevant expertise enabling him to offer responsible opinion testimony helpful to a judge or a jury." *Glover,* 2011 WL 1362103, at *1-2. As stated at the hearing, Mr. Cranfill relied upon standards applicable to his background as a forensic accountant while examining the documentation the plaintiffs' provided. To the extent that the plaintiffs disagree with Mr. Cranfill's opinions and testimony or the facts he relies upon, those issues "bear on the weight of the evidence rather than on its admissibility." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 801 (6th Cir. 2000).

### III.

Based on the foregoing discussion and analysis, it is hereby

**ORDERED** that the plaintiffs' Motions to Exclude Defendant Shelter Mutual Insurance Company's Expert [Record Nos. 32 and 36] are **DENIED**.

This 8th day of January, 2014.



Signed By:
*Danny C. Reeves* DCR
United States District Judge